848 P.2d 296

**The STATE of Arizona, Appellee,**

v.

**David Dean KRANTZ, Appellant.**

**No. 2 CA–CR 92–0192.**

Court of Appeals of Arizona,
Division 2, Department A.

May 28, 1992.

Review Denied April 13, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie and Jack Roberts, Phoenix, for appellee.

Henze, Ronan & Clark by Greg Clark, Phoenix, for appellant.

## OPINION

HOWARD, Judge.

Appellant was convicted of manslaughter, a dangerous nature offense, after the vehicle he was driving while under the influence of alcohol rear-ended the victim's motorcycle that was stopped at a traffic light. He was sentenced to the presumptive term of 7.5 years' imprisonment and ordered to pay $5,059.12 in restitution. On appeal he contends that the trial court erred in (1) denying his request for a new determination of probable cause, (2) precluding him from presenting evidence of the presence of methamphetamine in the victim's system, and (3) denying his motion to suppress certain statements and evidence of his blood alcohol content. We affirm for the reasons stated below.

## I

### DENIAL OF MOTION FOR REDETERMINATION OF PROBABLE CAUSE

Appellant's first contention is that the trial court should have granted his motion for redetermination of probable cause because the state did not inform the grand jurors of the lesser included offense of negligent homicide which "unfairly narrowed the options available" to them. However, once a jury has made a determination of guilt beyond a reasonable doubt, the issue is no longer reviewable. *State v. Haas*, 138 Ariz. 413, 675 P.2d 673 (1983). Appellate review of the denial of a motion for redetermination of probable cause must be sought by special action. *See State v. Coconino County Superior Court, Div. II*,

139 Ariz. 422, 678 P.2d 1386 (1984). The jury's verdict rendered the issue moot.

## II

### EVIDENCE REGARDING VICTIM

■ We also reject appellant's contention that the trial court erred in granting the state's motion in limine precluding the introduction of evidence of methamphetamine in the victim's system and denying his motion for mistrial on the same ground. Appellant contends that he was precluded from presenting evidence relevant to his defense that the collision was an accident. The admissibility of evidence is within the trial court's discretion and absent an abuse of that discretion we will not disturb the court's decision on appeal. *State v. Charo,* 156 Ariz. 561, 754 P.2d 288 (1988).

The evidence relevant to this issue, taken in the light most favorable to upholding the verdict, *State v. Zmich,* 160 Ariz. 108, 770 P.2d 776 (1989), was that appellant had been drinking and had a blood alcohol level of between .28 and .30 percent at the time of the collision. He would not allow his passenger to drive notwithstanding her insistence that she do so, and he was traveling at approximately 50 miles per hour (10 miles over the speed limit) when he struck the victim's stationary motorcycle, which was in the center turn lane and had its rear light on. In granting the state's motion, the trial court stated that absent any showing how the drug had affected the victim, the evidence of methamphetamines was only marginally relevant and was unduly prejudicial under Ariz.R.Evid. 403, 17A A.R.S. Aside from the fact that appellant was unable to show that the victim was impaired, we fail to see how the victim's ability to perceive would, in any event, have assisted in appellant's defense. The evidence was clearly irrelevant and was not, consequently, "evidence essential to his case." *State v. Gonzales,* 140 Ariz. 349, 351, 681 P.2d 1368, 1370 (1984). We cannot say that the trial court clearly abused its discretion in excluding it.

## III

### MOTION TO SUPPRESS EVIDENCE OF BLOOD ALCOHOL CONTENT AND STATEMENTS

After the accident, which occurred in the early morning of October 5, 1989, appellant and his passenger were taken to the hospital. Appellant was interviewed by Officer Sills of the Phoenix Police Department, who testified that he observed evidence of alcohol impairment and smelled alcohol. He told appellant that he was under arrest for aggravated assault and advised him of his *Miranda*[1] rights. When he asked appellant whether he understood his rights, appellant stated, "okay, I guess so." Sills then told appellant he was going to have blood drawn from him and was going to ask him to submit to a breath test. Appellant then stated, "Hey, if this is going to affect me in any way, I want a lawyer." According to Sills, he then stopped questioning appellant. However, his blood was drawn after he signed a consent form from the hospital, and he submitted to a breathalyzer test.

■ Officer Gault, who had been present during the prior events, responded to appellant's calls on October 24 and November 2, regarding the status of the case. During their conversations, appellant made certain statements which were admitted over appellant's objection. Appellant has made no argument on appeal regarding the propriety of the admission of these statements, and has therefore abandoned the issue. *State v. Nirschel,* 155 Ariz. 206, 745 P.2d 953 (1987). In any event, there is more than sufficient evidence in the record to support the trial court's conclusion that the statements were voluntary.

In denying the motion to suppress the blood and breath test results, the trial court stated that it had balanced Arizona's expanded right of privacy "with the well-settled case law basically founded upon *Schmerber v. California,* [384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)]." As we understand appellant's arguments, they are

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

as follows: (1) his right to equal protection under the law was violated because he was charged with a non-DUI offense (one not under Title 28) and, consequently, was afforded less constitutional protection; and (2) obtaining the samples without his consent violated his right to privacy which, under Arizona's statutory and constitutional provisions, is greater than the right under the federal constitution.

■ The first question we must address is whether the record supports the trial court's determination that appellant did not consent to the taking of blood and breath. The trial court's findings in this regard are somewhat confusing. Although the court concluded that appellant had not consented, the court found that appellant "voluntarily cooperated throughout the whole procedures and that there was no undue coercion of any kind." These findings contradict the conclusion. The court did, however, state that the officers told appellant that law enforcement personnel were allowed to take blood, a finding that is supported by the record. Thus, the trial court clearly believed that appellant did not consent but simply submitted to the authorities.

We also note that the hospital consent form which appellant signed does not, in light of the evidence presented, establish that appellant consented. The form was specifically designed for obtaining evidence in cases under Title 28, driving under the influence of alcohol or drugs (DUI), and provided that appellant had been orally advised that he had a right to refuse the test but that refusal would result in the suspension of his license. However, the officers testified that they never advised appellant as set forth in the form. Second, there is no right to refuse to provide evidence of blood alcohol content. *Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971). *See also Schmerber v. California, supra* (compelling a suspect to provide blood sample does not violate due process, the privilege against self-incrimination, the right to counsel, or the right against unreasonable searches and seizures). Thus, we conclude that the record sufficiently sup-

ports the trial court's conclusion that appellant did not consent. We now address appellant's constitutional claims.

Appellant argues that the implied consent law, A.R.S. § 28–691, gives persons charged with DUI offenses greater rights than those charged with other, non-DUI offenses and that such disparate treatment amounts to a violation of his right to equal protection under the federal and state constitutions. To the extent that appellant is asserting that a DUI suspect has a right to refuse to provide breath or blood samples, he is mistaken, as noted above. Appellant also contends that by arresting individuals for DUI instead of other crimes, "the State is able, without a warrant, to obtain blood and breath" samples. We do not understand how the latter argument shows a violation of equal protection rights given the fact that even DUI suspects are requested to provide such samples without a warrant. Moreover, § 28–691 only requires law enforcement to have "reasonable grounds to believe the person to have been driving ... while under the influence of intoxicating liquor or drugs" as opposed to probable cause.

■ The implied consent law provides an automatic sanction for the refusal to provide evidence of blood alcohol content, that is, the suspension of the driver's license. Additionally, the driver's refusal is admissible against the accused in a prosecution for DUI. A.R.S. § 28–692(K). The purpose of the implied consent law is to remove drunk drivers from this state's highways and to give the suspect notice of the administrative consequences of refusing to provide a sample, not to provide a shield for a drunk driver who has caused a death. *State v. Waicelunas,* 138 Ariz. 16, 672 P.2d 968 (App.1983). The DUI arrestee is only requested to provide samples and may not be compelled to do so. Interpreting A.R.S. § 28–691, the court in *Campbell* stated:

This language does not give a person a "right" to refuse to submit to the test only the physical power. We agree with the court in *Bush v. Bright,* [264 Cal. App.2d 788, 789, 71 Cal.Rptr. 123, 124 (1968)] that the "obvious reason for ac-

quiescence in the refusal of such a test by a person who as a matter of law is 'deemed to have given his consent' is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates."

106 Ariz. at 549, 479 P.2d at 692.

Outside the DUI context, that is, where Title 28 does not apply, *Schmerber* and its progeny apply to the obtaining of evidence from an accused. Those arrested for non-DUI offenses may be compelled to provide such evidence. Of course, such an individual does have a right against unreasonable searches and seizures which prohibits compelled "intrusions which are not justified in the circumstances, or which are made in an improper manner." *Schmerber, supra,* 384 U.S. at 768, 86 S.Ct. at 1834, 16 L.Ed.2d at 918. Unless a suspect class is created or affected, however, neither the state nor the federal constitution prohibits different treatment of different categories of people or offenses where there is a reasonable basis for such disparate treatment. *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *State v. Smith,* 166 Ariz. 450, 803 P.2d 443 (App.1990).

There are numerous reasonable bases for the disparate treatment of those accused of DUI offenses and those accused of other crimes. The legislature's intent with regard to the DUI laws is to stop the carnage on our highways and remove drunk drivers from our roads. However, notwithstanding the legislature's recognition of the seriousness of DUI offenses, they are still driving offenses and distinguishable from crimes specified under the criminal code. A.R.S. §§ 13–101, *et seq.* Moreover, the blood alcohol test results can establish an essential element of the offense or at least raise certain presumptions. By virtue of the implied consent law, the legislative goal with respect to the DUI laws is accomplished without compelling the suspect to submit to the tests. A refusal gets the driver off the road automatically and is

evidence in the DUI prosecution, while submitting to the test may establish an essential element of the offense. We hold then that the disparate treatment of DUI suspects and those arrested for other crimes is reasonably based.

■ We also reject appellant's argument that his breath and blood results should have been suppressed based on a broader privacy right under this state's constitution than under the federal constitution. Article II, § 8 of the Arizona Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." The provision has no federal counterpart and, it is argued, is broader than the fourth amendment's prohibition against unreasonable searches and seizures. Appellant contends that the implied consent law is the legislature's acknowledgment that there is "more security in the Arizona Constitution." We fail to see how the implied consent law evidences an expansion of the privacy right. As we stated earlier, the law does not give motorists charged with DUI the right to refuse the test; it only gives them the power to refuse and provides for certain consequences of such a refusal and notice to the suspect of the same.

Even if one were to construe this state's privacy rights as broader than under the federal constitution, we do not believe this would render unreasonable a search or seizure that has been found to be reasonable under well-developed case law. Cases in which the Arizona Constitution has been found to provide greater protection relate primarily to warrantless searches of the home. *State v. Ault,* 150 Ariz. 459, 724 P.2d 545 (1986), *State v. Bolt,* 142 Ariz. 260, 689 P.2d 519 (1984), *State v. Martin,* 139 Ariz. 466, 679 P.2d 489 (1984).[2] We are not aware of any cases extending this principle so as to render unlawful the warrantless extraction of nontestimonial evidence

---

**2.** Indeed, as Chief Justice Feldman has noted, "in [*State v. Superior Court,* 143 Ariz. 45, 691 P.2d 1073 (1984) ] a case decided the same year as *Bolt,* without explanation, the court failed to mention the Arizona Constitution and upheld administrative-type roadblocks to deter drunk drivers." Feldman, S.G. and Abney, D.L., *The Double Security of Federalism: Protecting Individual Liberty Under the Arizona Constitution,* 20 Ariz.St.L.J. 115, 132 (1988).

of evanescent blood alcohol content following arrest. The record supports the trial court's finding that the blood was drawn in an appropriate medical setting and that the breath was obtained in a generally accepted manner. *See Schmerber, supra.* It does not offend our "sense of justice" which the Supreme Court referred to in *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and again in *Breithaupt v. Abram,* 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), and *Schmerber, supra,* that the blood and breath samples were obtained after appellant was arrested for manslaughter.

We have reviewed the entire record for fundamental error and, having found none, we affirm the conviction and the sentence imposed.

LIVERMORE, C.J., and LACAGNINA, P.J., concur.