877 P.2d 1342

**Lionel A. VALENZUELA, Plaintiff/Appellee,**

v.

**Charles COWAN, Director, Arizona Department of Transportation, Motor Vehicle Division, Defendant/Appellant.**

No. 2 CA–CV 94–0088.

Court of Appeals of Arizona, Division 2, Department A.

July 21, 1994.

Reconsideration Denied Aug. 8, 1994.

Stephen Paul Barnard, P.C. by Stephen Paul Barnard, Tucson, for plaintiff/appellee.

Grant Woods, Atty. Gen. by Richard Kamps, Phoenix, for defendant/appellant.

LACAGNINA, Judge.

The Arizona Department of Transportation appeals from the trial court's order vacating the suspension of Lionel A. Valenzuela's driver's license, based on its finding that after Valenzuela submitted to a preliminary breath test he was not "fully and fairly warned" that his failure to take the test offered pursuant to A.R.S. § 28–691 would result in the suspension of his license. We reverse because we find that Valenzuela was adequately advised of the consequences of his refusal.

Valenzuela was stopped upon suspicion of driving while under the influence of intoxicating liquor. The officer completed a Horizontal Gaze Nystagmus test, a voluntary preliminary breath test, and physical field sobriety tests. The officer informed Valenzuela that the preliminary breath test was voluntary, but that if he was arrested, he would then be advised of tests that would have to be taken, and that he would have to make additional decisions at that time. The preliminary breath test showed Valenzuela had a .191 percent blood alcohol concentration.

After placing him under arrest for DUI, the officer read Valenzuela the Admin Per Se/Implied Consent Affidavit,[1] and when

---

1. The pertinent portions of the affidavit read as follows:

Arizona law requires you to submit to and successfully complete *a test or tests* of breath, blood or other bodily substance as chosen by the law enforcement officer to determine alcohol concentration or drug content. The law enforcement officer may require you to submit to *two or more tests*. You are required to successfully complete each of the tests.

\* \* \* \* \* \*

If you refuse to submit or do not successfully complete the specified test(s), your Arizona driver license/permit or nonresident driving privilege will be suspended for twelve (12) months. You are, therefore, required to submit to the specified test(s).

asked if he would submit to a test, Valenzuela said, "No.... Listen. I've already taken the test." The officer attempted to explain the consequences of Valenzuela's refusal, observed for the required time period before administering the test, and read to Valenzuela from the affidavit that he was not "entitled to further delay taking the test(s) for any reason," and that "[f]urther delay will be considered refusal to submit to the test(s)." He again asked Valenzuela if he would submit to the test, and Valenzuela said, "No. Go ahead and suspend my license. I'll beat it in court." Once the intoxilyzer machine had cycled, the officer informed Valenzuela that he considered Valenzuela's response a refusal. He then read to and served him with the suspension order, stating that his license was suspended for a period of twelve months.

The hearing officer found that (1) the preliminary breath test was voluntary and not admissible pursuant to A.R.S. § 28–695; (2) it was used solely to determine whether reasonable grounds existed to believe that Valenzuela was driving under the influence; (3) this was not a *Sherrill v. DOT*, 165 Ariz. 495, 799 P.2d 836 (1990),[2] situation; and (4) A.R.S. § 28–691 requires and authorizes a test or *tests*. Based upon these findings, the hearing officer ruled that (1) the statute required Valenzuela "to submit to and successfully complete a designated test or tests" to determine alcohol concentration, and that (2) Valenzuela had not satisfied the requirements of A.R.S. § 28–691. The superior court reversed Valenzuela's license suspension, and the Department of Transportation appeals from that judgment.

On appeal from an administrative agency decision, the superior court and this court are limited in their review to determining whether the agency's decision was arbitrary and capricious or an abuse of its discretion. *DeGroot v. Arizona Racing Commission*, 141 Ariz. 331, 686 P.2d 1301 (App.1984). This court may not reweigh the facts or substitute its findings for that of the administrative

agency. *Kuznicki v. ADOT*, 152 Ariz. 381, 732 P.2d 1119 (App.1986).

▪ In vacating the suspension of Valenzuela's license, the superior court found that Valenzuela was not "fully and fairly warned that his failure to take a second breathalyzer test imperiled his driving privilege." Valenzuela additionally argues that § 28–691 requires that following an initial refusal, the licensee must be given a second opportunity to take the test, *after* the officer informs him of the consequences of refusal. We find both conclusions erroneous.

▪ The Implied Consent statute distinguishes between the preliminary breath test initially administered to Valenzuela, and the later mandatory test required by the statute, and contemplates multiple tests. Section 28–691.01(A) authorizes a preliminary breath test prior to arrest if the officer has reasonable suspicion to believe that the licensee is driving under the influence. Subsection B also authorizes, in addition to "a breath test or tests," additional testing pursuant to § 28–691. Section 28–691(A) also permits "a test or tests." *See State v. Rodriquez*, 173 Ariz. 450, 844 P.2d 617 (App.1993). Therefore, even if the preliminary breath test in this case had been admissible, which is questionable considering the lack of a waiting period or replicate testing, the officer could still require further tests under the statute. *See State ex rel. Dean v. City Court*, 163 Ariz. 510, 789 P.2d 180 (1990).

The record also shows that the officer complied with the statutory notice requirement. Valenzuela was told that the preliminary breath test was voluntary, but that if he was arrested, he might be subjected to a later test. Following his arrest, he was again told, *prior to the officer's attempt to administer the mandatory test*, in a verbatim recitation of the affidavit, that he was required to submit to a test or tests and that his refusal would result in the suspension of his license. It could not have been any clearer; Valenzuela was "fully and fairly warned" of the

(Emphasis added).

**2.** The Arizona Supreme Court in *Sherrill* held that under the facts of that case, absent evidence of either the licensee's noncooperation or the inadequacy of the deficient sample, and in the

face of evidence that the licensee provided a usable sample that was instrumental in obtaining a DUI conviction, the state failed to show that the licensee had refused to successfully complete the test.

consequences of his refusal. Valenzuela's subjective belief that he had already taken the test does not change the fact that he was informed otherwise in clear, precise language by the officer.

Additionally, we disagree with Valenzuela's argument that the licensee must be notified twice of the consequences and given a second opportunity to take the test. Although the Implied Consent statute contemplates multiple tests, there is nothing that either explicitly or implicitly requires an arresting officer to coincide the giving of notice with the licensee's refusal, thus allowing an additional opportunity to take the test. *Compare, People v. Rosado,* 158 Misc.2d 50, 600 N.Y.S.2d 624 (1993) (statute specifically requires that following a refusal, licensee must be told of consequences prior to a required second offer). The hearing officer in this case was only required to determine whether Valenzuela had been informed of the consequences of his refusal, § 28–691(H), prior to any attempt to administer the mandatory test. *Campbell v. Superior Court,* 106 Ariz. 542, 552, 479 P.2d 685, 695 (1971). The record shows he was so informed. The hearing officer was not required to determine whether he was so informed following his refusal.

The language in § 28–691(B) does not mandate a different result. It provides that "if the violator refuses he shall be informed that his license or permit to drive will be suspended or denied for twelve months." Although inartfully worded, subsection B means that the violator shall be informed that *if* he refuses, his license will be suspended. It does not mandate the time when he is notified, nor does it imply an additional opportunity to take the test. Arizona law does not require two test opportunities.

The order vacating Valenzuela's license suspension is reversed, and the case is remanded to the superior court with directions to reinstate the suspension.

LIVERMORE, P.J., and FERNANDEZ, J., concur.