8 P.3d 376

The STATE of Arizona, Appellant,

v.

Michael GAFFNEY, Appellee.

No. 2 CA–CR 99–0189.

Court of Appeals of Arizona,
Division 2, Department B.

Feb. 24, 2000.

Review Granted Dec. 5, 2000.

**189**

Jerry B. DeRose, Gila County Attorney By David P. Savel, Globe, Attorneys for Appellant.

The Law Offices of David Michael Cantor, P.C. By Kristen M. Curry, Tempe, Attorneys for Appellee.

ESPINOSA, Chief Judge.

¶ 1 The state appeals from the trial court's order granting appellee Michael Gaffney's motion to suppress his blood and urine test results obtained after he was arrested for driving while under the influence of an intoxicant (DUI). We have jurisdiction pursuant to A.R.S. § 13–4032(G). Finding that the trial court erred in granting the motion, we vacate its order.

### Facts and Procedural History

¶ 2 We view the following facts adduced at the suppression hearing in the light most favorable to sustaining the trial court's ruling. *State v. Moore*, 183 Ariz. 183, 901 P.2d 1213 (App.1995). In the early evening of March 21, 1998, Gaffney and his wife were riding on a motorcycle when Gaffney collided with a pickup truck at an intersection. Later that evening, City of Snowflake Police Officer Hill met Gaffney at a local hospital to question him about the accident and determine whether he had been drinking alcohol. After Gaffney stated he had drunk some beer earlier in the evening, Hill performed a horizontal gaze nystagmus (HGN) test and observed three cues of impairment. Based on this information and an investigating officers' belief that Gaffney had caused the accident by running a red light, Hill arrested him for DUI.

¶ 3 At Hill's request, Gaffney agreed to have his blood drawn at the hospital. Later, at the police station, Gaffney also agreed to and did provide a urine sample. Hill testified it is his department's policy that, when officers ask individuals to provide breath, blood, or urine samples pursuant to the implied consent statute, A.R.S. § 28–1321, they read a standard "admin per se implied consent affidavit," which explains, pursuant to the statute, the consequences to suspects both of their refusal to submit to the officers' chosen test or tests and of a determination that their blood alcohol concentration (BAC) is over the legal limit. Hill conceded, however, that he had not read the form to Gaffney or otherwise explained to him the consequences of his decision whether to provide the requested blood sample before Gaffney provided it and could not remember if he had done so before Gaffney provided the urine sample.

¶ 4 The blood test showed Gaffney had a BAC of .134, and the urine test showed the presence of a marijuana metabolite. The state charged Gaffney with three counts of DUI, two counts of endangerment, and one count each of aggravated assault and use of marijuana. Gaffney moved to suppress the test results, arguing, inter alia, that the state had "failed to comply with the requirements of the Implied Consent Statute ... by failing to advise [him] of the consequences of submitting to or refusing the blood and urine tests prior to submitting to them." After a hearing, the trial court found that Gaffney had "not been advised of the requirements to give a blood or breath sample prior to doing so, nor [had he been] told the consequences for refusal, or for failing the tests," concluding that Hill had violated § 28–1321. Accordingly, the court suppressed the test results on this ground, stating it was not necessary to consider Gaffney's other argument that the police had lacked probable cause to arrest him for DUI. The court granted the state's subsequent motion to dismiss the charges without prejudice, and this appeal followed.

### Discussion

¶ 5 The state contends the trial court erred in ruling that § 28–1321 required Hill to inform Gaffney of the consequences of his decision whether to submit to tests of his

blood and urine before he submitted to the tests, arguing that these admonitions were required only if Gaffney refused to take the tests. And, it argues, because Gaffney agreed upon request to take the tests, Hill's failure to read the admonitions was not a violation of the statute and, accordingly, was not a proper basis on which to suppress the test results. We will not reverse a trial court's ruling on a motion to suppress evidence absent clear and manifest error. *State v. Rodriguez*, 186 Ariz. 240, 921 P.2d 643 (1996).

¶ 6 The interpretation and application of a statute is a legal issue that we review de novo. *State v. Korzuch*, 186 Ariz. 190, 920 P.2d 312 (1996). When construing a statute, our goal is to identify and give effect to the intent of the legislature. *State v. Williams*, 175 Ariz. 98, 854 P.2d 131 (1993). We look first to the statute's language, based "on the presumption that the legislature says what it means," *Bustos v. W.M. Grace Development*, 192 Ariz. 396, 398, 966 P.2d 1000, 1002 (App.1997), and, if the language is clear and unambiguous, we must apply it without resorting to other methods of statutory interpretation. *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 872 P.2d 668 (1994).

¶ 7 Section 28–1321(A) provides that any "person who operates a motor vehicle in this state gives consent . . . to a test or tests of the person's blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration" when a law enforcement officer has reasonable grounds to believe that the person has been driving while under the influence of intoxicating liquor or drugs. Section 28–1321(B) provides in relevant part:

> After an arrest a violator shall be requested to submit to and successfully complete any test or tests prescribed by subsection A of this section, and if the violator refuses the violator shall be informed that the violator's license or permit to drive will be suspended or denied for twelve months, . . . unless the violator expressly agrees to submit to and successfully completes the test or tests. A failure to expressly agree to the test or successfully complete the test is deemed a refusal. The violator

> shall also be informed that if the test results show a blood or breath alcohol concentration of 0.10 or more, . . . the violator's license or permit to drive will be suspended or denied for not less than ninety consecutive days.

(Emphasis added.)

¶ 8 The statute's language clearly and unambiguously states that a DUI suspect need be informed about the consequences of his or her refusal to submit to a blood, breath, or urine test if, and when, the suspect refuses such a request. Upon such refusal, the statute provides both that the "violator shall be informed" about the consequences of refusing to submit to a test and, in parallel fashion, that the "violator shall also be informed" about the consequences of having a BAC over the legal limit. This phrasing and placement strongly suggest that both provisions must be read together and apply after the violator refuses the test.

¶ 9 Gaffney argues, without support, that the statute's language and "[t]he legislative intent . . . would indicate that the warnings be given prior to any test." Our contrary reading of the statute, however, is bolstered by the legislature's 1983 amendment to the implied consent statute, then A.R.S. § 28–691. That amendment deleted language that had required a law enforcement officer to inform a suspect about the consequences of his or her refusal to submit to a test during a fifteen-minute period between the arrest and the administration of the test and replaced it with the current language that requires such a warning "if the violator refuses" to submit to the test. 1983 Ariz. Sess. Laws, ch. 279, § 5. Our interpretation is also consistent with the "purpose of the implied consent [statute, which is] to remove drunk drivers from this state's highways and to give the suspect notice of the administrative consequences of refusing to provide a sample" for testing. *State v. Krantz*, 174 Ariz. 211, 214, 848 P.2d 296, 299 (App.1992). Because Gaffney readily agreed to Hill's requests that he provide blood and urine samples, he was never subject to a suspension of his license under the implied consent law. We find nothing in either the statute's language or its legisla-

tive history suggesting that the admonitions were otherwise required because Gaffney faced potential criminal charges. See *State v. Vannoy*, 177 Ariz. 206, 866 P.2d 874 (App. 1993) (civil license suspension under implied consent law separate from and unrelated to criminal DUI prosecution); *Krantz* (civil sanction under implied consent law not intended to provide shield for impaired drivers).

¶ 10 Our interpretation is further supported by the language of § 28–1321(C), which provides that the tests authorized in subsection A may be administered to a person who is unconscious or otherwise incapable of refusing the test. Test results from such a person presumably could be introduced in a criminal proceeding against the person, notwithstanding that he or she, like Gaffney, had not been advised of the potential consequences of refusing or agreeing to submit to such tests. This reflects the fact that the person, having operated a motor vehicle in this state, has already implicitly consented to such tests. § 28–1321(A). See *Ricard v. Arizona Dep't of Transp.*, 187 Ariz. 633, 636, 931 P.2d 1143, 1146 (App.1997) ("A motorist arrested within Arizona for driving under the influence is deemed to have given 'consent' to a test to determine blood alcohol content."). This is so regardless of whether the person lacks knowledge about the ramifications or consequences of that action. Cf. *Gaunt v. Motor Vehicle Div.*, 136 Ariz. 424, 666 P.2d 524 (App.1983) (neither DUI suspect's mistaken belief, confusion, or intoxication can excuse suspect's refusal to take test). In sum, we find nothing in the statute's language, history, or purpose suggesting that the statute's warnings must be provided when drivers give express consent to a test of their blood, breath, or urine.[1]

■ ¶ 11 Finally, we agree with the state that a police department's policy of reading the admonitions provided in the implied consent affidavit, an administrative form, before a suspect submits to tests cannot alter or enlarge the requirements of the statute. See *Braun v. Motor Vehicle Div.*, 161 Ariz. 487, 779 P.2d 362 (App.1989) (law enforcement agency's internal policy of offering DUI suspects option of breath test before blood test did not create irrevocable election binding on agency as to which test to offer first because implied consent statute did not mandate any particular order; officer who violates internal policy may be required to explain action to superiors, but violation does not involve statutory rights).

■ ¶ 12 Having found that Officer Hill's actions did not violate the terms of the implied consent statute, we conclude that the trial court clearly erred in suppressing the test results on this ground. Although Gaffney urges us to affirm the court's ruling on the alternate ground that the state lacked probable cause to arrest him, thus tainting his subsequent consent to submit to the tests, the trial court declined to rule on this issue. Accordingly, we do not consider it, but note that Gaffney may reurge that argument should the state refile the charges.[2]

¶ 13 The trial court's order suppressing Gaffney's blood and urine test results is vacated.

---

1. We find misplaced Gaffney's reliance at oral argument on language in *State v. Juarez*, 161 Ariz. 76, 775 P.2d 1140 (1989), and *Valenzuela v. Cowan*, 179 Ariz. 286, 877 P.2d 1342 (App.1994). *Juarez* is a right-to-counsel case, with no application here. And *Valenzuela*, unlike this case, involved a DUI suspect's refusal to submit to the officer's chosen test. We upheld the officer's actions in reading the admonitions before the suspect had refused to submit to a breath test, rather than after, concluding that the statute requires only that the admonitions be read at some point before an attempt is made to administer the test. Neither *Juarez* nor *Valenzuela* directly addressed whether a suspect who upon request agrees to testing must, nevertheless, be informed about the potential consequences.

2. Gaffney also urges us to affirm the court's ruling on the ground that the police had coerced his cooperation by promising he could see his wife if he took the tests. Although the court noted in its suppression order that "[b]oth sides agree that he was promised he would be allowed to leave to attend to his wife after he took the blood test at the hospital," it did not find that Gaffney relied on the comment or that it rendered his consent involuntary. In any event, this question was for the trier of fact at trial, not the trial court in a pretrial evidentiary hearing. *State v. Superior Court*, 155 Ariz. 408, 747 P.2d 569 (1987).

CONCURRING: J. WILLIAM BRAMMER, JR., Presiding Judge, and JOSEPH W. HOWARD, Judge.