ECKERSTROM, Chief Judge,
dissenting:
¶ 36 When a law enforcement officer instructs a person who has been arrested for DUI that “Arizona law requires” him to “submit to” warrantless chemical tests to determine his blood alcohol concentration (BAC), as occurred here, the officer is asserting a claim of legal authority to conduct a search. As the Supreme Court held in Bumper v. North Carolina, 391 U.S. 543, 548-49, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), a person’s “acquiescence to a claim of lawful authority” makes the evidence obtained from it inadmissible under a theory of voluntary consent.
¶ 37 The admonition here does not merely explain the “adverse consequences resulting from a refusal” to take a test, State v. Moore, 354 Or. 493, 318 P.3d 1133, 1137 (2013), and it does not simply present a suspect with an unpleasant but permissible choice such as that addressed in South Dakota v. Neville, 459 U.S. 553, 564, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). Nor does it suggest or imply that the suspect has a legally recognized right to refuse the search. To the contrary, the admonition emphasizes expressly and repeatedly — no less than four times — that submission to the search is “required.”
¶ 38 As the United States Supreme Court has made clear, a person’s consent to a search can be voluntary only so long “as the police do not convey a message that compliance with their requests is required.” Florida v. Bostick, 501 U.S. 429, 435, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). But when, as here, police assert that compliance is required, they effectively announce that the person “has no right to resist the search.” Bumper, 391 U.S. at 550, 88 S.Ct. 1788. Such “colorably lawful coercion” by an officer precludes a finding of voluntariness, because “[w]here there is coercion there cannot be consent.” Id. Thus, a straightforward reading and application of controlling jurisprudence requires suppression of the BAC test results.
*317 ¶ 39 In most instances, the voluntariness of consent is a question of fact to be determined from the totality of the circumstances. State v. Butler, 232 Ariz. 84, ¶ 13, 302 P.3d 609, 612 (2013). But Bumper establishes that when the facts show the police have asserted a claim of lawful authority to conduct a search, then a court’s analysis has reached its end; voluntary consent cannot be found as a matter of law. In Bumper, one of several law enforcement officers had asserted, “I have a search warrant to search your house,” and the resident subsequently opened her door to permit entry. 391 U.S. at 546, 88 S.Ct. 1788. The dissent maintained that the search should be upheld because the totality of the circumstances suggested nonetheless that she had invited the officers to search of her own free will and had no objection to it. Id. at 555-56, 88 S.Ct. 1788 (Black, J., dissenting). The majority, however, declined to consider such factors in its analysis. See id. at 547-48 & 547 n. 8, 88 S.Ct. 1788. In so doing, the Court construed a person’s acquiescence to a claim of authority as showing an intent to abide by the law; it is not interpreted as a waiver of rights, but rather as a submission to lawful authority. See id. at 549 n. 14, 88 S.Ct. 1788.
¶ 40 The majority suggests that Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), rather than Bumper, should control here. But McNeely did not address any question of consent, much less consent in the context of an officer’s claim of lawful authority. Rather, McNeely addressed the circumstances under which police may conduct a warrantless blood draw in the absence of consent. 133 S.Ct. at 1556. Contrary to the majority’s assertion, therefore, adherence to the Court’s holding in Bumper does not conflict with the analytically distinct question presented in McNeely.[15] Bumper has neither been overruled nor narrowed by subsequent opinions of the Court, and it squarely addresses the claim before us. I submit we are duty bound to apply it.
¶ 41 Indeed, the categorical rule from Bumper conforms to the traditional test for determining voluntary consent to a search. That test is whether a “ ‘reasonable person’ ” in the same circumstances would have understood that he or she was free to decline the officer’s request. United States v. Drayton, 536 U.S. 194, 202, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002), quoting Bostick, 501 U.S. at 436, 111 S.Ct. 2382. Categorically, reasonable persons do not — and should not — believe themselves free to decline an officer’s demand that they follow the requirements of the law. Cf. State v. Rodriguez, 186 Ariz. 240, 246, 921 P.2d 643, 649 (1996) (“A reasonable person would assume that police understood the boundaries of the law.”).
¶ 42 This is the only rule that can be harmonized with safe and orderly interactions between law enforcement officers and suspects. Were our laws to permit persons to second-guess or refuse commands made under color of law, we would undermine the “ ‘[o]rderly submission to law-enforcement officers,’” Bumper, 391 U.S. at 549 n. 14, 88 S.Ct. 1788, quoting United States v. Elliott, 210 F.Supp. 357, 360 (D.Mass.1962), thereby increasing risks to both officer and public safety. As our own supreme court has observed, “if resistance to an arrest or a search made under the color of law is allowed, violence is not only invited but can be expected.” State v. Hatton, 116 Ariz. 142, 147-48, 568 P.2d 1040, 1045-6 (1977).[16]
*318 ¶ 43 The admonition given to Valenzuela here would cause any reasonable person to believe a chemical test is demanded under color of law, and required rather than voluntary.[17] The admonition begins with the statement that “Arizona law requires you to submit to and successfully complete [the] tests,” proceeds thereafter to assert that “[t]he law enforcement officer may require you to submit to two or more tests,” that “[y]ou are required to successfully complete each of the tests,” and, at its conclusion, that “[y]ou are, therefore, required to submit to the specified tests.”[18] In short, the admonition begins and ends with the officer’s assertion that the tests are required — and, if that were not enough, it reminds the suspect of that claim twice in between.
¶ 44 That a DUI arrestee is asked, “Will you submit to the specified tests?” at the conclusion of the admonition does not alter the voluntariness analysis. As noted above, immediately before that question suspects are informed, “You are, therefore, required to submit to the specified tests.” Moreover, a law enforcement officer who asks a DUI arrestee whether he will “submit” to a legally “required” test neither semantically nor logically presents the suspect with a voluntary, uneoerced choice. See Bostick, 501 U.S. at 435, 111 S.Ct. 2382 (police request for consent must not “convey a message that compliance with their requests is required”). Indeed, the word “submit” suggests that the arrestee is being asked to “accept or give in to the authority” of the officer. The American Heritage Dictionary 1737 (5th ed.2011).
¶ 45 By its plain terms, therefore, the admonition asserts a claim of lawful authority that precludes a finding of voluntariness. In the context of the officer’s unambiguous statement to Valenzuela — that “Arizona law require[d]” him to submit to testing — I cannot agree with my colleagues that Valenzuela’s subsequent submission can reasonably be viewed as anything other than acquiescence to a claim of lawful authority.
¶ 46 Nor does the admonition given here, by describing the civil penalties for refusal, “explicitly acknowledge[ ]” any “right to refuse tests.”[19] Supra ¶ 13. Before McNeely *319 and Butler recently clarified DUI suspects’ federal constitutional rights with respect to chemical testing, we repeatedly had distinguished a right to refuse testing from the mere power to do so, recognizing only the latter. E.g., Campbell v. Superior Court, 106 Ariz. 542, 549, 479 P.2d 685, 692 (1971) (“[Statutory] language does not give a person a ‘right’ to refuse to submit to the test only the physical power.... [A] person does not have a right to refuse to submit to the test....”); Tomabene v. Bonine, 203 Ariz. 326, ¶ 19, 54 P.3d 355, 363 (App.2002) (“ ‘[T]he law does not give motorists charged with DUI the right to refuse the test; it only gives them the power to refuse and provides for certain consequences of such a refusal.’ ”), quoting State v. Krantz, 174 Ariz. 211, 215, 848 P.2d 296, 300 (App.1992); see also State ex rel. Verburg v. Jones, 211 Ariz. 413, ¶ 8, 121 P.3d 1283, 1285 (App.2005) (“A person always has the power to refuse to submit to lawful authority.”).
¶ 47 Notably, the pertinent language in the admonition used here has remained the same since this pre-McNeely and Butler period of jurisprudence and therefore was crafted with that understanding in mind. See, e.g., Tornabene, 203 Ariz. 326, ¶ 5, 54 P.3d at 359 (“Arizona law requires you to submit to and successfully complete tests of breath, blood or other bodily substance as chosen by the law enforcement officer.... ”). Thus, both the description of penalties for refusal and the ultimate query — asking if the suspect will submit to the test — implicitly acknowledge only that a suspect has the power to decline to follow the “require[ments]” of the law. Understood in the context of contemporary case law, such language was not designed to suggest that a suspect enjoys any right to refuse to take the test.
¶ 48 In fact, our law acknowledges numerous circumstances in which defendants possess the power, rather than the right, to refuse to comply with the requirements of the law. State law requires that arrestees submit to fingerprinting, A.R.S. § 13-3890(A), even though it too can be “refused” by an arrested person and compelled by a later court order. § 13 — 3890(B); see Mario W. v. Kaipio, 230 Ariz. 122, ¶¶ 9, 21, 281 P.3d 476, 479, 481 (2012). Persons who appropriately pull over when a patrol vehicle activates its emergency lights also theoretically have the power to instead engage in a high-speed chase. Nonetheless, we do not characterize their compliance with that command as a waiver of any later assertion that the officer lacked adequate cause to perform the stop. This is because pulling over is required by law regardless of whether a person chooses to do so. See A.R.S. §§ 28-622.01, 28-624(C); see also A.R.S. § 28-622(A) (“A person shall not willfully fail or refuse to comply with any lawful order or direction of a police officer invested by law with authority to direct, control or regulate traffic.”). Similarly, when officers ask DUI arrestees whether they will submit to tests that “Arizona law requires,” the officers no more suggest that the arrestees may lawfully refuse than when they ask suspects whether they will submit to an arrest and thereby avoid additional consequences for resistance, pursuant to A.R.S. § 13-2508. Neither query implies that submission is optional rather than mandatory.[20]
¶ 49 Although the majority would impute knowledge of § 28-1321(D)(1) to arrestees by operation of law — a provision which might be construed to imply a right to refuse testing— such an imputation finds no clear precedent in the law of search and seizure. “It is often stated that every person is ‘presumed’ to know the law. This ‘conclusive presumption’ is merely a restatement of the substantive rule that ignorance of the law is not a defense.” Edwards v. United States, 334 F.2d 360, 366 (5th Cir.1964). We generally impute knowledge of the law — or what it forbids— for purposes of imposing criminal liability. See Cheek v. United States, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). But we do not do so when assessing whether police have asserted a claim of lawful authority or whether a person’s consent to a search *320 was voluntarily given. This is evident from the relevant legal tests controlling those inquiries.
¶ 50 In evaluating whether a person has provided voluntary consent to a search, we are instructed to pragmatically assess whether “a reasonable person would feel free to decline the officers’ requests.” Bostick, 501 U.S. at 436, 111 S.Ct. 2382. To support its contention that Valenzuela knew he could decline the testing here, the majority imputes to him (1) a sophisticated knowledge of the interplay between Arizona’s implied consent statute and the Fourth Amendment, a contentious issue resolved only recently by the United States Supreme Court, see Butler, 232 Ariz. 84, ¶¶ 9-10, 302 P.3d at 612; and (2) an interpretation of Arizona law (that a statutory right of refusal exists) at odds with longstanding Arizona jurisprudence holding that a suspect possessed only the power, not the right, to refuse testing. Campbell, 106 Ariz. at 549, 479 P.2d at 692. In so doing, I fear the majority has held Valenzuela to the standard of an especially gifted criminal lawyer rather than to the standard of a reasonable, ordinary person. Moreover, a legal presumption imputing to suspects such a comprehensive knowledge of the law cannot be harmonized with the fact-intensive inquiry into voluntariness and would render superfluous the consideration of any “advice to the accused of his constitutional rights,” a factor indisputably relevant to evaluating consent to a search. Schneckloth, 412 U.S. at 226, 93 S.Ct. 2041.
¶ 51 One further implication of imputing such knowledge to suspects is especially troubling. Under the majority’s logic, an officer may incorrectly advise suspects that they are required by law to submit to the officer’s commands, yet they will be held to know otherwise. By so removing official negligence or malfeasance from a voluntariness analysis, a court incentivizes police misinformation and actual coercion under color of law.
¶ 52 For these reasons, our analysis must be controlled by the admonition actually provided to Valenzuela rather than by the majority’s novel, post-Butler reading of Arizona’s implied consent statute. Under that admonition, no reasonable persons would logically construe the itemization of negative consequences for refusing the test as a signal that they have a legal entitlement to do so. To the contrary, substantial penalties, whether civil or criminal, are commonly reserved for violations of law, and sanctions usually may not be imposed for the assertion of a constitutional right. Thus, the articulation of civil penalties set forth in the admonition fails to meaningfully qualify or mitigate the accompanying assertions that the officer has the lawful authority to conduct the test.[21]
¶ 53 In sum, the typical DUI stop and arrest presents a driver with a number of legal obligations and choices. Yet the admonition here utterly fails to distinguish one’s submission to a chemical test as a voluntary act among the many mandates. Simply presenting an arrested motorist with a yes-or-no choice to comply with a duty — whether that duty be real, colorable, or entirely false— does not transform the interaction into a consensual one. When an arresting officer repeatedly says that something is required of an arrestee, no reasonable person would take that admonition to mean that submission to the officer’s authority is not actually required, but rather voluntary. And the contrary conclusion reached by the majority suggests a significant flaw in its reasoning.
¶ 54 Whereas other possible admonitions might allow a finding of voluntary consent, as *321 other states’ decisions may indicate, the present admonition does not. The majority’s reliance on State v. Brooks, 838 N.W.2d 563 (Minn.2013), is misplaced. Minnesota’s implied consent statute and admonition are distinguishable because they inform drivers of their “right to talk to a lawyer before deciding whether to take a test,” id. at 565, which was a significant factor in Brooks’s voluntariness analysis. Id. at 571-72.[22]
¶ 55 The case of People v. Harris, 234 Cal.App.4th 671, 184 Cal.Rptr.3d 198 (2015), is more analogous to the present situation, although its reasoning is unpersuasive. There, the appellate court noted that the defendant repeatedly was told the chemical tests were “required,” id. at 204, but it nevertheless reasoned that “a motorist [being] told he will face serious consequences if he refuses to submit to a blood test does not, in itself, mean that his submission was coerced.” Id. at 211. That reasoning fails to address how a suspect’s acquiescence to a “required” test can ever logically demonstrate voluntary consent. And, assuming arguendo that an advisory such as that here — which both asserts that the test is compulsory and emphasizes only the negative consequences of refusal — is not coercive, the mere absence of coercion falls far short of demonstrating any equivalence between submission and consent.
¶ 56 The admonition here flatly and incorrectly provides that “Arizona law requires” a person arrested for DUI to submit to chemical tests, without identifying any countervailing legal right. It does not advise an arrestee of the additional terms of our implied consent law explaining that “[t]he test shall not be given, except ... pursuant to a warrant” or under certain limited circumstances, if the person refuses to consent to the tests. § 28-1321(D)(1). Nor does it inform a person of the constitutional right to refuse warrantless testing under the Fourth Amendment to the United States Constitution and article II, § 8 of the Arizona Constitution. By both omitting any reference to the constitutional right or the statutory option to refuse testing, and by implying that the requirement to submit to testing is broad and unqualified, the current advisory is misleading and coercive.
¶ 57 In short, the language found in the admonition and read to Valenzuela is subject to only one reasonable understanding of its purpose: to induce acquiescence to a warrantless test. The document was manifestly not designed to advise suspects of their constitutional right or implicit statutory choice to refuse. It contains no language that even suggests the suspect possesses any option but to submit. I fear the majority opinion therefore errs in construing mere acquiescence to that advisory as anything other than what is: submission to a claim of lawful authority.
¶ 58 Given that persons driving in Arizona possess a constitutional right to refuse to submit to testing of their blood or breath in the absence of a search warrant, I would hold that it is not appropriate for our state’s officers to repeatedly suggest otherwise. A revised admonition that eliminates the mandatory language would likely be permissible; however, the warning in its current form is not. Accordingly, I respectfully dissent from the majority’s opinion upholding the suppression ruling. I would reverse that ruling, order the BAC results suppressed, and remand the case to be retried solely on the aggravated DUI charges concerning impairment to the slightest degree under A.R.S. § 28-1381(A)(1).

. Despite the majority's suggestion, our supreme court’s decision in Butler, 232 Ariz. 84, ¶ 21, 302 P.3d at 613 — which upheld a finding of involuntary consent — did not address the argument presented here, nor did its quotation of the admin per se affidavit imply that the court approved of that document’s language. Id. V 4; see Calnimptewa v. Flagstaff Police Dep't, 200 Ariz. 567, ¶ 24, 30 P.3d 634, 639 (App.2001) (“[I]t is always inappropriate to read an appellate opinion as authority for matters neither specifically presented and discussed, nor even accorded footnote mention.”). Notably, the language of "require[ment]" found in the admin per se affidavit has no basis in Arizona’s implied consent statute, § 28-1321. Therefore, while the principles set forth in Bumper require some revision of the admin per se affidavit, no changes are required to § 28-1321 to comply with that precedent.

. Although the majority cites Schneckloth v. Bustamonte to support a totality-of-the-circumstances approach to voluntariness deviating from Bumper, it overlooks that Schneckloth emphasized the "narrow” scope of its decision and stated that its holding applied "only ... when the subject of a search is not in custody.” 412 U.S. 218, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). *318 Here, by contrast, we are faced with an in-custody defendant who was advised by an officer of the putative requirements of Arizona law to submit to a search, meaning Bumper should control. Despite the majority’s suggestion, the custodial status of a DUI arrestee, with its attendant coercive pressures, clearly distinguishes the present situation from an ordinary civil subpoena to testify, and we derive no benefit from the comparison. See Maryland v. Shatzer, 559 U.S. 98, 106-07, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010) (acknowledging coercive influences arrestees face in unfamiliar, police-dominated atmosphere when police persist in seeking cooperation with active criminal investigation).

. The DPS officer testified at the suppression hearing that he had read the admonition from "the admin per se affidavit” from the Arizona Department of Transportation, which is a standard document substantially set forth in Butler, 232 Ariz. 84, ¶ 4, 302 P.3d at 611, and used as an exhibit at the hearing, though not formally admitted into evidence. See State v. Gaffney, 198 Ariz. 188, ¶¶ 3, 11, 8 P.3d 376, 377, 379 (App-2000) (describing document as standard administrative form); see also Tornabene v. Bonine, 203 Ariz. 326, ¶ 5, 54 P.3d 355, 359 (App.2002). The state does not dispute the content of the admonition here, and the officer’s testimony about the form — which included a partial but verbatim quotation — establishes and confirms its essential features. Nonetheless, the precise author and authority of the form are irrelevant to the present voluntariness analysis. Furthermore, if this court were inclined to work with a more complete appellate record rather than emphasize its limitations, we could order the record supplemented to include this exhibit under the terms of Rule 31.8(a)(2)(iii), Ariz. R.Crim. P.

. A similar but conditional provision not implicated in this case advises anyone who delays testing, "You are not entitled to further delay taking the tests for any reason.”

. The majority's focus on the language of the implied consent statute is misplaced, because it is the admonition given to a suspect that is relevant to the consent analysis — the claim of authority, as opposed to the authority itself. Cf. Bumper, 391 U.S. at 549-50 & 550 n. 15, 88 S.Ct. 1788 (assessing admissibility of evidence based solely on consent, not putative search warrant). Despite a suspect's legal rights or awareness thereof, an admonition given by an officer may be coercive if it makes an unqualified demand under color of law and does not indicate that the officer will respect the suspect’s invocation of his right to refuse to cooperate. Cf. Miranda v. Arizona, 384 U.S. 436, 468, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (noting Miranda advisory designed to overcome inherent pressures of interrogation and "show the individual that his interrogators are prepared to recognize his privilege should he choose to exercise it").

. The evident purpose of the question here is to clarify the moment at which administrative sanctions can be imposed and an officer can take the next step in the law enforcement process. Rather than suggesting a right to refuse, the affidavit's interrogatory merely provides a formal mechanism for establishing an unambiguous refusal.

. The majority emphasizes the officer’s testimony that if a person refused the test, the officer then would apply for a search warrant to compel testing. Supra ¶¶ 13, 21. But the officer's possible actions after a defendant’s acquiescence are irrelevant to an analysis of the voluntariness of a suspect’s consent and what was said to secure it. Furthermore, it is unclear from the testimony whether the officer addressed the topic of search warrants with Valenzuela prior to obtaining consent for the tests. The standard implied consent admonition read here makes no reference to warrants, and the officer appeared to describe a distinct two-step process in the remainder of his testimony:
[I]f they say, well, no, I'm not going to give you my blood or my breath, then [wej're also telling them you have another choice, and the choice is that we will get a warrant.... We ask for consent first. If they refuse consent, they're informed at that time that we're gonna obtain a warrant and to get the blood sample.

. Both Brooks, 838 N.W.2d at 569, and State v. Smith, 849 N.W.2d 599, ¶ 9 (N.D.2014), are also distinguishable because statutes in those states criminalize the refusal to submit to testing, whereas Arizona imposes only administrative penalties of which Valenzuela was advised here. See State v. Brito, 183 Ariz. 535, 538, 905 P.2d 544, 547 (App.1995). Insofar as Brooks and Smith nonetheless found DUI suspects’ consent to be voluntary in their respective statutory environments, the obvious question remains without a satisfying answer: If criminalizing the exercise of a constitutional right to refuse warrantless testing is not coercive, then what exactly is?