905 P.2d 544

**STATE of Arizona, Appellee,**

v.

**Ernest Hernandez BRITO, Appellant.**

**No. 1 CA–CR 93–0637.**

Court of Appeals of Arizona,
Division 1, Department D.

June 6, 1995.

Review Denied Nov. 21, 1995.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div. Appeals Section, and Randall M. Howe, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Brent E. Graham, Deputy Public Defender, Phoenix, for appellant.

## OPINION

VOSS, Judge.

In this case we hold that a defendant charged with aggravated driving while under the influence of intoxicating liquor or drugs ("aggravated DUI") is not entitled to a bifurcated trial; and that a driver does not have an unfettered right to refuse to submit to a test to determine his blood-alcohol concentration upon request by a law enforcement officer.

### FACTS AND PROCEDURAL HISTORY

On November 10, 1993, Phoenix Police Officer Charles Leist, Jr. noticed a red Chevy pickup spinning its wheels on the wet pavement. The pickup stopped at an intersection for a red light, and when the traffic light turned green, Leist watched the truck proceed through the intersection, again spinning its wheels. Leist began following the pickup and caught up to it when it turned into the driveway of a house.

Leist approached Defendant Ernest Hernandez Brito, who was the driver of the pickup, and asked him for his driver's license, registration, and proof of insurance. Defendant lay down across the front seat to reach into his glove compartment. While retrieving the documents, he dropped several items and had problems picking them up. While looking through his papers, Defendant said, "Okay. What am I looking for?" He looked for the documents for a brief period, but could not find them. He told Leist that they were probably inside the house.

Defendant's speech was extremely slurred, he had an obvious odor of alcohol on his

breath, and he was, wearing dark sunglasses even though it was close to midnight. When Defendant took off his sunglasses, Leist noticed that Defendant's eyes were watery and bloodshot. The backup officer performed the Horizontal Gaze Nystagmus (HGN) test[1] on Defendant and observed all six cues, which she testified was consistent with the consumption of alcohol. Furthermore, the backup officer testified that there was an odor of alcohol on Defendant's breath, that he had bloodshot eyes, and that he had difficulty with his balance.

At the police station, Leist read Defendant his *Miranda* rights[2] and the implied consent law.[3] He agreed to answer questions and told Leist that he had been on his way home when he was stopped. Defendant admitted that he had consumed "a few beers" beginning at approximately 10:30 that night. He also admitted that he was "not completely sober." Defendant refused to perform any field sobriety tests and twice refused to take a breath test after being informed of the consequences of such refusal.

At trial, certified copies of Defendant's driving record that revealed his two prior misdemeanor DUI convictions from 1987 were admitted into evidence. Certified copies of the city court records regarding these two convictions were also admitted into evidence. Defendant testified and denied many of the facts related by the arresting officer regarding his conduct on the night of the offense. However, Defendant admitted that he told the officer that he had consumed two or three beers earlier in the evening and that he was not completely sober when he was stopped. He explained to the jury that he refused to take the breath test because he already was under arrest and was very upset. He also told the jury that he was not impaired that evening.

---

1. Nystagmus refers to an involuntary jerking of the eyeball, which may be aggravated by central nervous depressants, such as alcohol. *The Merck Manual of Diagnosis and Therapy* 1980 (14th ed. 1982). In administering this test, the officer observes whether a person's eyes can track movement smoothly, at what angle nystagmus occurs, and whether pronounced nystagmus occurs at a maximum deviation. *See* 60 A.L.R.4th 1129, 1131–32 (1988).

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. The warning read to Defendant states: "Arizona law requires you to submit to and successfully complete a test or tests chosen by the law enforcement officer to determine the alcohol concentration or drug concentration."

Following his jury trial, Defendant was found guilty of aggravated DUI, a class 5 felony. Defendant's sentence was suspended, and he was placed on three years probation. As a condition of probation, the court ordered Defendant to serve a term of six months imprisonment. On appeal, Defendant raises the following arguments: (1) that his due process rights were violated because the trial court refused to bifurcate the trial to prove his prior convictions; (2) that the trial court abused its discretion in admitting Defendant's implied consent affidavit.

## DISCUSSION

### Bifurcated Trials

Defendant was convicted of aggravated driving while under the influence of intoxicating liquor pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 28–692.02(A)(2), (D) (1990), which at the time of Defendant's offense provided, in pertinent part:

A. A person is guilty of aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs if the person does either of the following:

. . . .

2. Commits a third or subsequent violation of section 28–692 .·.. within a period of sixty months.

. . . .

D. Aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs is a class 5 felony. A person convicted under this section is not eligible for probation, pardon, parole, ... or release on any other basis ... until the person has served not less than six months in prison.

Defendant concedes that pursuant to this statute, the State must prove the existence of his two prior DUI convictions as an element of the current offense. Defendant further recognizes the prior case law that states he is not entitled to a bifurcated trial to prove the prior convictions element of aggravated DUI. *State of Arizona v. Superior Court,* 176 Ariz.

614, 616, 863 P.2d 906, 908 (App.1993) (holding defendant not entitled to bifurcated trial on issue of prior DUI convictions because existence of prior DUIs is an element of the substantive offense of aggravated DUI); *e.g., State v. Geschwind,* 136 Ariz. 360, 363, 666 P.2d 460, 463 (1983) (holding evidence of underlying crime admissible where legislature has included such conduct as an element of crime for which defendant is on trial).

Nevertheless, Defendant contends that the principle enunciated in *Geschwind* and its progeny violates his due process right to a fair trial. He argues that, by not bifurcating the trial, the State is allowed to admit improper character evidence to demonstrate his propensity to commit the crime of DUI.[4] We disagree.

■ "[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." *E.g., Spencer v. Texas,* 385 U.S. 554, 563–64, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1967) (admission of prior crime evidence in a one-stage recidivist trial does not violate due process). Therefore, although Defendant has a constitutional right to a fair trial, this right does not guarantee a trial unfettered by all harmful or prejudicial evidence. *See State v. Schurz,* 176 Ariz. 46, 52, 859 P.2d 156, 162, *cert. denied,* —— U.S. ——, 114 S.Ct. 640, 126 L.Ed.2d 598 (1993) (mere prejudice is not basis for exclusion of evidence under Rule 403—evidence can be harmful yet not unfairly prejudicial).

■ The legislature has wide latitude in defining crimes and fashioning the corresponding penalties. *E.g., State v. Ramos,* 133 Ariz. 4, 6, 648 P.2d 119, 121 (1982). Other statutes exist which require proof of a prior conviction as an element of the substantive offense. For example, it is a class 6 felony for a person to possess a deadly weapon if he previously has been convicted of a violent felony. A.R.S. §§ 13–3101(5)(b), – 3102(A)(4) (1989). The existence of the prior violent felony is an element of the crime of misconduct involving weapons. Arizona courts have upheld this statute as constitutional. *State v. Noel,* 3 Ariz.App. 313, 315, 414 P.2d 162, 164 (App.1966); *State v. Ras-*

---

4. Ariz.R.Evid. 403, 404.

*con*, 110 Ariz. 338, 339, 519 P.2d 37, 38 (1974). Furthermore, statutes of this type have been deemed constitutional in both federal and state courts on due process grounds. *Noel*, 3 Ariz.App. at 315, 414 P.2d at 164 (citations omitted).

■ Defendant contends that he was prejudiced by the introduction of his prior DUI convictions because this evidence permitted the jury to prejudge him as guilty by his bad record and propensity to drive under the influence of alcohol. We note, however, that the jury was instructed to not use this evidence for the purpose which Defendant complains. Specifically, the jury was instructed:

> Evidence of prior misdemeanors of the defendant has been admitted into evidence in this case. Such evidence has been admitted solely in connection with whether the State may meet its burden of proof concerning such convictions as an element of the offense. *Such evidence must not be considered by you to prove the character of the defendant or to show that he committed any other elements of the offense charged. You are not allowed to consider this evidence in any way in considering the defendant's behavior or actions on the night in question.*

(Emphasis added.) When such a limiting instruction is given, we assume that the jury followed the instructions. *E.g., State v. Herrera*, 174 Ariz. 387, 395, 850 P.2d 100, 108 (1993). As a result, Defendant failed to demonstrate unfair prejudice, resulting from the trial court's compliance with the non-bifurcation procedure in this case; therefore, we find no due process violation.

### Implied Consent Affidavit

Next, Defendant contends that the trial court erred by allowing the arresting officer to testify regarding the exact wording of the implied consent warning [5] that was read to Defendant on the night of his DUI arrest. Defendant argues that the warning misstated the law, thus confusing the jury, and prejudicing him "by making it appear that he

acted wrongfully by refusing [the breath test] when he had every right to refuse."

■ Preliminarily, we note that a licensed driver does not have an unfettered right to refuse to take a blood alcohol test or breath test upon the request of a law enforcement officer. Although he may refuse the request, the refusal has consequences. Defendant does not dispute that the law provides a penalty for such refusal. A.R.S. § 28–691(B) (Supp.1994).

■ The remainder of Defendant's argument is similarly semantical. He claims that the introductory phrase in the implied consent affidavit read at trial misstates the law. That statement reads: "Arizona law *requires* you to submit to and successfully complete a test or tests chosen by the law enforcement officer to determine the alcohol concentration or drug concentration." (Emphasis added.) Defendant claims that pursuant to A.R.S. section 28–691(B) this implied consent affidavit misstates the law because the statute does not "require" a person to submit to a test. Instead, the statute states that "a violator *shall be requested* to submit to and successfully complete any test or tests prescribed . . . ." A.R.S. § 28–691(B) (emphasis added). Therefore, Defendant contends the law provides that a person is not required to submit to a test, he is merely requested to do so.

In *Edwards v. Arizona Dept. of Trans.*, 176 Ariz. 137, 859 P.2d 760 (App.1993), this court analyzed the same implied consent warning that was read in this case. In *Edwards* the defendant complained that the warning was insufficient because it failed to explain the availability of a restricted driver's license if defendant failed the test. The defendant claimed that he would have taken the test if he had known of this possibility. *Id.* at 138–39, 859 P.2d at 761–62. In *Edwards*, the court found that the warning was not "legally incorrect" and that it clearly reflected the presumptive consequences if a suspect failed the test. *Id.* at 140, 859 P.2d at 763.

---

**5.** All persons who operate a motor vehicle implicitly consent to take a test to determine their alcohol concentration. The law enforcement of-

ficer must inform a suspect of this consent, and the consequences if he refuses to take the test. *See* A.R.S. § 28–691(B).

In *Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971), the supreme court examined the constitutional validity of the implied consent law under the state's police power. In *Campbell,* the court reaffirmed the legitimacy of the legislative purpose underlying this law—that is, to remove drivers from the highway "who are a menace to themselves and to others because they operate a motor vehicle while under the influence of intoxicating liquor." *Id.* at 546, 479 P.2d at 689. The court therefore held that it is "reasonable *to require* a person to submit to a chemical test of his blood, breath or urine if arrested for driving while intoxicated or face six months suspension of his driver's license." *Id.* (emphasis added).

The implied consent warning read to Defendant and read at trial does not misstate the law; therefore, no error was committed by the trial court's admission into evidence of the warning which was read verbatim.

We have reviewed the record for fundamental error pursuant to A.R.S. section 13–4035 (1989) and have found none. For the foregoing reasons, the conviction and sentence imposed are affirmed.

GRANT and WEISBERG, JJ., concur.