PELANDER, J., dissenting.
 

 ¶22 I respectfully disagree with the majority's conclusion that the good-faith exception to the exclusionary rule applies to this case.
 
 [2]
 
 Although I agree with Justice Bolick's conclusion that "the continued use of the admonition alone to establish voluntary consent was of dubious constitutionality following [
 
 State v.
 
 ]
 
 Butler
 
 , [
 
 232 Ariz. 84
 
 ,
 
 302 P.3d 609
 
 (2013) ],"
 
 infra
 
 ¶ 40 (Bolick, J., dissenting), I write separately to explain my reasoning because my approach differs from his.
 

 ¶23 Weakland's consent to a blood draw directly followed the arresting officer's telling her twice, pursuant to an "admin per se" form, that "Arizona law requires you to submit to and successfully complete" the blood test. In
 
 State v. Valenzuela
 
 (
 
 Valenzuela II
 
 ),
 
 239 Ariz. 299
 
 , 301 ¶ 2, 309 ¶ 33,
 
 371 P.3d 627
 
 , 629, 637 (2016), we held that "showing only that consent was given in response to this admonition fails to prove that an arrestee's consent was freely and voluntarily given" for providing a blood sample and "cannot excuse the failure to secure a warrant." But we found that "[t]he good-faith exception applie[d]" because the arresting officer "followed binding precedent that had sanctioned use of the admonition read to Valenzuela" at the time of his 2012 arrest.
 

 Id.
 

 at 309 ¶¶ 32-33,
 
 371 P.3d at
 
 637 (citing
 
 Campbell v. Superior Court
 
 ,
 
 106 Ariz. 542
 
 , 546,
 
 479 P.2d 685
 
 , 689 (1971), and
 
 State v. Brito
 
 ,
 
 183 Ariz. 535
 
 , 538-39,
 
 905 P.2d 544
 
 , 547-48 (App. 1995) ).
 

 ¶24 The next year, in
 
 State v. Havatone
 
 ,
 
 241 Ariz. 506
 
 , 512 ¶ 28,
 
 389 P.3d 1251
 
 , 1257 (2017), this Court found the good-faith exception inapplicable when "no binding precedents specifically authorized" the practice of warrantless, nonconsensual blood draws from unconscious DUI suspects, and "Arizona case law regarding a per se exigency was, at most, unsettled." I dissented in that case and would have applied the good-faith exception.
 

 Id.
 

 at 521 ¶ 62,
 
 389 P.3d at 1266
 
 (Pelander, J., concurring in part and dissenting in part). But unlike
 
 Havatone
 
 , this case does not involve "a presumptively valid state statute" that "specifically and expressly" authorized the practice in question.
 

 Id.
 

 at 515 ¶ 38, 521 ¶ 63,
 
 389 P.3d at 1260
 
 , 1266 (citing A.R.S. § 28-1321(C) ). Nor does application of the exclusionary rule in this case impose on officers an "expect[ation] to anticipate or predict a future change in our case law."
 

 Id.
 

 at 521 ¶ 63,
 
 389 P.3d at 1266
 
 .
 

 ¶25 More recently, addressing facts predating
 
 United States v. Jones
 
 ,
 
 565 U.S. 400
 
 ,
 
 132 S.Ct. 945
 
 ,
 
 181 L.Ed.2d 911
 
 (2012), this Court found the good-faith exception applied to officers' installation of a GPS device on a suspect's vehicle in 2010.
 
 State v. Jean
 
 ,
 
 243 Ariz. 331
 
 , 342-43 ¶¶ 40-47,
 
 407 P.3d 524
 
 , 535-36 (2018). We reasoned that the officers conducted the search "in objectively reasonable reliance" on prior, binding United States Supreme Court cases,
 

 id.
 

 at 343 ¶ 47,
 
 407 P.3d at 536
 
 , and we rejected the argument that "to qualify as 'binding appellate precedent under
 
 Davis
 
 [
 
 v. United States
 
 ,
 
 564 U.S. 229
 
 ,
 
 131 S.Ct. 2419
 
 ,
 
 180 L.Ed.2d 285
 
 (2011) ],' a case 'must specifically authorize the precise conduct under consideration,' "
 
 id.
 
 ¶ 45 (quoting
 
 United States v. Katzin
 
 ,
 
 769 F.3d 163
 
 , 176 (3d Cir. 2014) ).
 

 ¶26 One could argue, as the amicus curiae Arizona Attorneys for Criminal Justice does, that some tension exists between
 
 Havatone
 
 and
 
 Jean
 
 .
 
 Havatone
 
 interpreted and applied the good-faith exception narrowly, finding "recurring or systemic negligence" that precluded application of the exception,
 
 241 Ariz. at
 
 511 ¶ 21,
 
 389 P.3d at 1256
 
 , in part because "Arizona case law in effect at the time of Havatone's blood test did not specifically authorize[ ]" the precise conduct at issue, namely, the "particular police practice of directing warrantless, nonconsensual blood draws from unconscious DUI suspects absent exigent circumstances,"
 

 id.
 

 at 513 ¶ 30,
 
 389 P.3d at 1256
 
 (alteration in original) (citation omitted) (internal quotation marks omitted);
 
 see also
 

 id.
 

 at 512 ¶ 24,
 
 389 P.3d at 1257
 
 .
 
 Jean
 
 , in contrast, took a less restrictive view, concluding that the good-faith exception applied because "the rationale underpinning" the prior Supreme Court precedent authorized the limited GPS monitoring in that case, even though the Court had not specifically authorized that precise conduct but only similar conduct in beeper cases.
 
 243 Ariz. at
 
 343 ¶ 45,
 
 407 P.3d at 536
 
 (internal quotation marks omitted). These divergent views regarding the scope of the good-faith exception are also illustrated in the majority and dissenting opinions in
 
 Jean
 
 .
 
 Compare
 

 id.
 

 at 342-43 ¶¶ 40-47,
 
 407 P.3d at 535-36
 
 ,
 
 with
 

 id.
 

 at 343-45 ¶¶ 49-57,
 
 407 P.3d at 536-38
 
 (Bales, C.J., dissenting in part and dissenting from the judgment).
 

 ¶27 Importantly, contrary to Justice Bolick's suggestion,
 
 infra
 
 ¶ 48,
 
 Davis
 
 does not resolve this dispute. The outcome in
 
 Davis
 
 is consistent with either approach, and language in
 
 Davis
 
 supports both views. In
 
 Davis
 
 , police officers engaged in the precise conduct specifically authorized by Eleventh Circuit precedent.
 
 564 U.S. at 239
 
 ,
 
 131 S.Ct. 2419
 
 . The Court concluded that relying on that precedent to engage in the same conduct authorized by it was objectively reasonable.
 
 Id.
 
 at 239-41,
 
 131 S.Ct. 2419
 
 . But the Court did not limit application of the good-faith exception to those circumstances. Instead, it broadly held that "the exclusionary rule does not apply" "when the police conduct a search in objectively reasonable reliance on binding appellate precedent," without setting forth the boundaries of that rule.
 
 Id.
 
 at 249-50,
 
 131 S.Ct. 2419
 
 ;
 
 see also
 

 id.
 
 at 232,
 
 131 S.Ct. 2419
 
 .
 

 ¶28 In my view,
 
 Jean
 
 's formulation and application of the good-faith exception is correct and better serves the values supporting the exclusionary rule and this exception to it.
 
 See
 

 Davis
 
 ,
 
 564 U.S. at 240, 249
 
 ,
 
 131 S.Ct. 2419
 
 ;
 

 Jean
 
 ,
 
 243 Ariz. at
 
 343 ¶ 46,
 
 407 P.3d at 536
 
 . Thus, I agree with the majority on that point.
 
 See
 

 supra
 
 ¶ 9. In a world with evolving technology and limited judicial resources, the validity of police officers' conduct should not hinge on appellate courts previously having specifically authorized every particular practice that officers might engage in or bear the risk that evidence will be suppressed if a practice is subsequently declared unconstitutional. This, of course, is especially true when a police officer can reasonably interpret those appellate decisions that do exist as authorizing related or similar practices based upon the rationales, principles, and reasoning that those decisions set forth. Under those circumstances, it is hard to understand what the deterrent value is in suppressing evidence when a future court later determines that a practice is unconstitutional. As this Court aptly observed in
 
 Jean
 
 , "
 
 Davis
 
 requires good faith and reasonableness, not a crystal ball."
 
 243 Ariz. at
 
 343 ¶ 45,
 
 407 P.3d at 536
 
 .
 

 ¶29 Any disparity between
 
 Havatone
 
 and
 
 Jean
 
 , however, is inconsequential and neither affects nor changes the outcome here. Under either approach to the good-faith exception,
 
 Butler
 
 sufficiently unsettled the aggregate of relevant Arizona case law relating to police officers' use of this "admin per se" form to preclude application of the exception in this case. Applying
 
 Havatone
 
 , Justice Bolick's dissent explains why, at the time of Weakland's post-
 
 Butler
 
 arrest in 2015, "a blanket policy to read the admonition but not to otherwise establish consent could not have been made in good faith, and therefore the good-faith exception to the exclusionary rule should not apply."
 
 Infra
 
 ¶ 53. But in reaching that conclusion, Justice Bolick's dissent implicitly questions the reasoning and result in
 
 Valenzuela II
 
 and disregards
 
 Jean
 
 , while neither the majority nor I do.
 
 See
 

 supra
 
 ¶¶ 9, 17.
 

 ¶30 Nonetheless, the same conclusion obtains under
 
 Jean
 
 . The rationale, principles, and reasoning underlying this Court's analysis in
 
 Butler
 
 undermine the State's claim that the aggregate of relevant Arizona case law at the time of Weakland's arrest could reasonably be understood as authorizing the practice of obtaining constitutionally adequate consent to blood testing by reading an "admin per se" form to an arrestee that instructs the arrestee that he or she is "require[d]" to submit to testing. Three reasons support this conclusion.
 

 ¶31 First,
 
 Butler
 
 expressly rejected the notion that Arizona's implied consent statute "requires" a person to submit to blood testing, which directly contradicts the language in the "admin per se" form later used when Weakland was arrested. This Court stated that the "consent" under that statute "does not always authorize warrantless testing of arrestees."
 
 Butler
 
 ,
 
 232 Ariz. at
 
 88 ¶ 17,
 
 302 P.3d at 613
 
 (quoting
 
 Carrillo v. Houser
 
 ,
 
 224 Ariz. 463
 
 , 465 ¶ 10,
 
 232 P.3d 1245
 
 (2010) ). Rather, we stated that the implied consent law directs an officer "to
 
 ask
 
 the arrestee to submit to the test, and the arrestee
 
 may then refuse
 
 by declining to expressly agree to take the test."
 

 Id.
 

 (emphasis added). "
 
 If the arrestee refuses
 
 , the statute specifies that
 
 a warrant is required
 
 to administer the test and the arrestee shall have his license suspended."
 

 Id.
 

 (emphasis added). These statements cannot reasonably be understood in good faith as authorizing an officer to admonish DUI arrestees that they are "require[d]" to submit to testing.
 

 ¶32 Second,
 
 Butler
 
 held that "independent" of the implied consent statute, "the Fourth Amendment requires an arrestee's consent to be voluntary to justify a warrantless blood draw."
 
 Id.
 
 ¶ 18. That statement cannot reasonably be understood in good faith as authorizing an officer to assume or infer that an arrestee's consent for Fourth Amendment purposes is voluntary based solely on (i.e., entirely
 
 dependent
 
 upon) the fact that the arrestee submitted to testing pursuant to an admonition that, for the reasons discussed above,
 
 Butler
 
 concluded erroneously misstates the implied consent statute.
 

 ¶33 Third, in support of the
 
 Butler
 
 trial court's finding that voluntary consent was lacking in that case, we noted that the officer (pursuant to the admin per se form) had twice told the suspect that he was "required to submit" to blood testing.
 
 Id.
 
 at 89 ¶ 20,
 
 302 P.3d at 614
 
 . Far from authorizing the practice of reading that form to an arrestee and
 then assuming or implying based on that fact alone that the arrestee's subsequent submission to testing constituted voluntary consent, this Court included that precise fact as a reason for upholding the trial court's finding that the suspect's consent was
 
 involuntary
 
 . Our including that fact as a reason for finding an arrestee's consent involuntary for Fourth Amendment purposes cannot reasonably be understood in good faith as authorizing an officer to obtain constitutionally adequate consent to blood testing by reading an "admin per se" form to an arrestee that instructs the arrestee that he or she is "require[d]" to submit to testing.
 

 ¶34 The majority contends, however, that "
 
 Butler
 
 did not 'unsettle' the law."
 
 Supra
 
 ¶ 13. According to the majority, "the sufficiency of consent given in response to the admin per se form alone" was not at issue in
 
 Butler
 
 ,
 
 supra
 
 ¶ 12, and that case "failed to meaningfully acknowledge the two binding appellate cases authorizing use of the language on the admin per se form-
 
 Campbell v. Superior Court
 
 ,
 
 106 Ariz. 542
 
 ,
 
 479 P.2d 685
 
 (1971), and
 
 State v. Brito
 
 ,
 
 183 Ariz. 535
 
 ,
 
 905 P.2d 544
 
 (App. 1995)."
 
 Supra
 
 ¶ 13. These assertions are unpersuasive.
 

 ¶35
 
 Butler
 
 did address the sufficiency of consent after the admonition-indeed, we expressly rejected the State's arguments that "the 'consent' in § 28-1321(A) either constitutes an exception to the warrant requirement or satisfies the Fourth Amendment's requirement that consent be voluntary."
 
 232 Ariz. at
 
 88 ¶ 17,
 
 302 P.3d at 613
 
 . Because the minor involved in
 
 Butler
 
 did consent-both verbally and in writing-after being given the per se admonition,
 
 see
 

 id.
 

 at 86 ¶ 4,
 
 302 P.3d at 611
 
 , our affirming the juvenile court's ruling that the consent nonetheless was involuntary necessarily implies that the mere fact that a suspect agrees to the test after the admonition does not suffice to establish voluntariness. With respect to
 
 Campbell
 
 and
 
 Brito
 
 , neither of those cases expressly discussed whether, apart from the implied consent statute, voluntary consent is required for a warrantless blood draw or whether acquiescence to a blood draw after the admonition itself establishes such consent (the issues
 
 Butler
 
 did decide). Thus, the majority's assertion that
 
 Butler
 
 failed to acknowledge "binding appellate cases" is incorrect.
 
 Supra
 
 ¶ 13. Indeed, in
 
 Butler
 
 the State did not contend that
 
 Campbell
 
 -much less
 
 Brito
 
 -somehow established that the consent involved in
 
 Butler
 
 was voluntary. Thus, there was no reason in
 
 Butler
 
 to discuss
 
 Campbell
 
 or
 
 Brito
 
 because they were not pertinent to the issues before the Court, much less "binding." Although those cases justified an officer's good-faith use in 2012 of the admin per se form that contained the "Arizona law requires" language,
 
 see
 

 Valenzuela II
 
 ,
 
 239 Ariz. at
 
 301 ¶¶ 4-5, 309-10 ¶¶ 32-34,
 
 371 P.3d at 629, 637-38
 
 , that cannot be said post-
 
 Butler
 
 for the 2015 arrest and search of Weakland here.
 

 ¶36 Application of the good-faith exception in this case requires the Court to take an even broader view of that exception than set forth in
 
 Jean
 
 . In
 
 Jean
 
 , we applied the good-faith exception because "the rationale underpinning" prior Supreme Court precedent could be logically and reasonably extended from beepers to GPS monitoring.
 
 243 Ariz. at
 
 343 ¶ 45,
 
 407 P.3d at 536
 
 (quoting
 
 Katzin
 
 ,
 
 769 F.3d at
 
 173-74 ). Significantly, though, at the time of the police officers' GPS monitoring in
 
 Jean
 
 , no United States Supreme Court case had explicitly or implicitly overruled or questioned its prior case law or otherwise suggested that GPS monitoring might be or likely is impermissible. That is precisely what made the officers' reliance on "the rationale underpinning" the prior cases reasonable. Stated differently, the officers in
 
 Jean
 
 could extract principles from the beeper cases and reasonably extend those principles to a new fact pattern, GPS monitoring, but they did so without ignoring authority cutting the other direction. Under those circumstances, this Court correctly found no deterrent value in suppressing the GPS monitoring evidence and correctly applied the good-faith exception.
 
 Id.
 
 ¶¶ 45-47.
 

 ¶37 But that is not the situation here. If we assume (and absent any facts in the record, we can only assume) that the police officer in this case relied on this Court's interpretation of the implied consent statute in
 
 Campbell
 
 (a 1971 decision) and the court of appeals' decision in
 
 Brito
 
 (a 1995 decision), the officer did
 so while ignoring this Court's contrary interpretation of the implied consent statute and analysis of constitutionally adequate consent in a subsequent, and much more recent, case.
 
 Butler
 
 (our 2013 decision) plainly cast doubt on whether the "admin per se" form accurately stated the law and whether a person's submission to testing after merely being read those admonitions could constitute voluntary consent for purposes of the Fourth Amendment, obviating the need for a search warrant.
 
 [3]
 
 Unlike in
 
 Jean
 
 , arguably there was authority on both sides of the scale here. Furthermore, unlike in
 
 Davis
 
 , the police officers did not follow, act in "strict compliance" with, or "scrupulously adhere[ ]" to the aggregate of relevant Arizona case law "to the letter."
 
 564 U.S. at 239, 249
 
 ,
 
 131 S.Ct. 2419
 
 . Nor could they have done so because the relevant law was, at best, unclear. But rather than "err on the side of constitutional behavior,"
 
 Havatone
 
 ,
 
 241 Ariz. at
 
 513 ¶ 29,
 
 389 P.3d at 1258
 
 (quoting
 
 United States v. Johnson
 
 ,
 
 457 U.S. 537
 
 , 561,
 
 102 S.Ct. 2579
 
 ,
 
 73 L.Ed.2d 202
 
 (1982) ), the officer proceeded in the face of "unsettled" law,
 

 id.
 

 at 512 ¶ 28,
 
 389 P.3d at 1257
 
 .
 

 ¶38 Therefore, under these circumstances, unlike in
 
 Jean
 
 and
 
 Davis
 
 , there is deterrent value in suppressing the blood draw evidence. Although
 
 Havatone
 
 , in my view and the majority's, interpreted the good-faith exception too narrowly, this Court correctly stated there that in " 'close' cases" police officers should err on the side of protecting citizens' constitutional rights.
 
 See
 

 id.
 

 at 513 ¶ 29,
 
 389 P.3d at 1258
 
 (quoting
 
 Johnson
 
 ,
 
 457 U.S. at 561
 
 ,
 
 102 S.Ct. 2579
 
 ). The arresting officer did not do so here.
 

 ¶39 Finally, in determining for Fourth Amendment purposes whether a DUI arrestee's consent was voluntary, we consider the totality of circumstances, which might include but are not necessarily limited to the arrestee submitting to blood testing after being given the (now invalid) "required by law" admonition.
 
 See
 

 Valenzuela II
 
 ,
 
 239 Ariz. at
 
 305-06 ¶ 21,
 
 371 P.3d at 633-34
 
 (holding that "a trial court should examine the totality of the circumstances to decide whether consent was voluntary, even when given after a law enforcement officer's assertion of lawful authority to search");
 
 Butler
 
 ,
 
 232 Ariz. at
 
 87 ¶ 13,
 
 302 P.3d at 612
 
 ("Voluntariness is assessed from the totality of the circumstances."). In this case, however, the record does not reflect any facts that bear on or might support a finding of voluntary consent other than Weakland's submission to blood testing after the "required by law" admonition was given to her. And, at oral argument in this Court, the State conceded that no other facts suggest voluntary consent under the totality of circumstances. Accordingly, I respectfully dissent from the majority's holding that the good-faith exception applies to this case and would instead apply the exclusionary rule and reverse the trial court's order denying Weakland's motion to suppress.
 

 BOLICK, J., joined by BALES, C.J., dissenting.
 

 ¶40 The sole question before the Court is whether, following our decision in
 
 State v. Butler
 
 ,
 
 232 Ariz. 84
 
 ,
 
 302 P.3d 609
 
 (2013), it was objectively reasonable for a police department to view acquiescence to the admonition at issue, standing alone, to establish voluntary consent to a blood draw, thus allowing admission of the blood test as evidence notwithstanding that the search violated Weakland's constitutional rights. Because the continued use of the admonition alone to establish voluntary consent was of dubious constitutionality following
 
 Butler
 
 , I respectfully dissent.
 

 ¶41 In
 
 Davis v. United States
 
 , the U.S. Supreme Court held that evidence resulting from an unconstitutional search would be suppressed unless the police were acting in good faith on "binding appellate precedent [that] specifically
 
 authorizes
 
 a particular police practice."
 
 564 U.S. 229
 
 , 241,
 
 131 S.Ct. 2419
 
 ,
 
 180 L.Ed.2d 285
 
 (2011). In
 
 State v. Havatone
 
 , we held that "[w]hen the Fourth Amendment violation occurred not as the result of an officer's fact-specific determination that obtaining a warrant is infeasible but pursuant to department practice making such determination unnecessary, we impute to the law enforcement agency the responsibility to assure that unlawful seizures will not occur."
 
 241 Ariz. 506
 
 , 511 ¶ 22,
 
 389 P.3d 1251
 
 , 1256 (2017) (citing
 
 Davis
 
 ,
 
 564 U.S. at 240
 
 ,
 
 131 S.Ct. 2419
 
 ). Application of the exclusionary rule where the law is "unsettled," or the constitutionality of a practice is "dubious," provides deterrence against unconstitutional behavior.
 

 Id.
 

 at 512-13 ¶ 29,
 
 389 P.3d at 1257-58
 
 . Indeed, if the rule "is not applied in 'close' cases, 'law enforcement officials would have little incentive to err on the side of constitutional behavior.' "
 

 Id.
 

 at 513 ¶ 29,
 
 389 P.3d at 1258
 
 (quoting
 
 United States v. Johnson
 
 ,
 
 457 U.S. 537
 
 , 561,
 
 102 S.Ct. 2579
 
 ,
 
 73 L.Ed.2d 202
 
 (1982) ).
 

 ¶42 The use of the admonition alone to establish voluntary consent was questionable long before
 
 Butler
 
 . The U.S. Supreme Court held in
 
 Bumper v. North Carolina
 
 that "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority."
 
 391 U.S. 543
 
 , 548-49,
 
 88 S.Ct. 1788
 
 ,
 
 20 L.Ed.2d 797
 
 (1968) (footnote omitted). Yet that is exactly the practice on which the majority bases the good-faith exception here, fifty years later.
 

 ¶43 Indeed, when we ruled the practice unconstitutional in
 
 State v. Valenzuela
 
 (
 
 Valenzuela II
 
 ), the Court acknowledged that it was applying well-settled law when it stated that "[t]he
 
 Bumper
 
 line of cases survives to invalidate any consent given only in acquiescence to an assertion of a lawful authority to search."
 
 239 Ariz. 299
 
 , 304 ¶ 17,
 
 371 P.3d 627
 
 , 632 (2016) (citing
 
 Florida v. Royer
 
 ,
 
 460 U.S. 491
 
 , 497,
 
 103 S.Ct. 1319
 
 ,
 
 75 L.Ed.2d 229
 
 (1983) (plurality opinion)). The Court read
 
 Bumper
 
 and
 
 Schneckloth v. Bustamonte
 
 ,
 
 412 U.S. 218
 
 ,
 
 93 S.Ct. 2041
 
 ,
 
 36 L.Ed.2d 854
 
 (1973), in tandem "as requiring a court to examine the circumstances surrounding an assertion of lawful authority to search to determine whether the consent was sufficiently independent of the assertion to remove its taint. If not, the consent was not freely and voluntarily given."
 
 Valenzuela II
 
 ,
 
 239 Ariz. at
 
 304 ¶ 17,
 
 371 P.3d at 632
 
 . In concluding that the State failed to meet its burden to demonstrate that Valenzuela's consent to the tests was voluntary, the Court remarked that "
 
 Bumper
 
 and
 
 Johnson
 
 [
 
 v. United States,
 

 333 U.S. 10
 
 ,
 
 68 S.Ct. 367
 
 ,
 
 92 L.Ed. 436
 
 (1948) ] direct this outcome."
 
 Valenzuela II
 
 ,
 
 239 Ariz. at
 
 306 ¶ 22,
 
 371 P.3d at 634
 
 . It is very difficult to argue that an outcome directed by decisions more than a half-century ago should have come as a surprise.
 

 ¶44 After our ruling in
 
 Butler
 
 , reliance solely on acquiescence to an admonition asserting legal authority to establish voluntariness was even more untenable. At the very least, the law was at best unsettled, which is an insufficient basis for the good-faith exception to the exclusionary rule.
 
 See
 

 Havatone
 
 ,
 
 241 Ariz. at
 
 512-13 ¶ 29,
 
 389 P.3d at
 
 1257-58 ;
 
 see also
 

 United States v. Lara
 
 ,
 
 815 F.3d 605
 
 , 613 (9th Cir. 2016) (holding the good-faith exception does not apply where "the appellate precedent, rather than being binding, is (at best) unclear"). In
 
 Butler
 
 , the State argued that tests administered under A.R.S. § 28-1321 were not subject to a Fourth Amendment voluntariness analysis-an argument we rejected.
 
 232 Ariz. at
 
 87 ¶¶ 9-10,
 
 302 P.3d at 612
 
 . And we rejected the State's argument that "consent" in the statute satisfies the Fourth Amendment's requirement that consent be voluntary.
 

 Id.
 

 at 88 ¶¶ 17-18,
 
 302 P.3d at 613
 
 . We held that, based on the totality of the circumstances, "the Fourth Amendment requires an arrestee's consent to be voluntary to justify a warrantless blood draw."
 
 Id.
 
 ¶ 18. Given that it was already well established that a prosecutor could not prove voluntariness based solely on assertion of authority, it should have been clear after
 
 Butler
 
 that acquiescence to the admonition alone would not suffice. Indeed, it is difficult to imagine a lawyer advising a police department that
 
 Butler
 
 raised no serious doubt about such a policy.
 

 ¶45 The majority does not dispute that the police should not rely on unsettled doctrine. Instead, it asserts that the term "unsettled" is "opaque,"
 
 supra
 
 ¶ 10, which it is not.
 
 See Unsettled
 
 , Webster's Third New International Dictionary (3d ed. 2002) (defining "unsettled" as "not decided or determined" or "not resolved or worked out"). The majority contends that
 
 Butler
 
 did not leave the law unsettled because
 
 Butler
 
 "did not address whether use of the admonition was inherently coercive, did not clearly address its effect, and did not expressly question its validity."
 
 Supra
 
 ¶ 13. The majority is conflating two distinct issues: (1) whether acquiescence in a search after the admonition establishes that it was voluntary for Fourth Amendment purposes without regard to other circumstances, a proposition
 
 Butler
 
 clearly rejects; and (2) whether the use of the admonition is inherently coercive and any consent given in response is therefore involuntary, the issue later addressed in
 
 Valenzuela II
 
 . The holding in
 
 Butler
 
 on the first issue was sufficient to cast doubt on resolution of the second issue. The Court noted that even under § 28-1321(A), "the officer is directed to ask the arrestee to submit to the test, and the arrestee may then refuse by declining to expressly agree to take the test.... We hold now that, independent of § 28-1321, the Fourth Amendment requires an arrestee's consent to be voluntary to justify a warrantless blood draw."
 
 Butler
 
 ,
 
 232 Ariz. at
 
 88 ¶¶ 17-18,
 
 302 P.3d at 613
 
 . Weakland's arrest was after
 
 Butler
 
 , and consent was not voluntarily conferred, as required by
 
 Butler
 
 . Thus, the warrantless blood draw, which all now concede was unconstitutional, could not have occurred in good faith.
 

 ¶46 The majority then says that "even if
 
 Butler
 
 presaged future court disavowal of the admonition, it did not foreclose its use."
 
 Supra
 
 ¶ 19. That depiction states the constitutional equation backward: we do not determine good faith based on whether the police have engaged in a practice the courts have clearly foreclosed, but rather on whether the courts have expressly authorized the practice.
 
 Davis
 
 ,
 
 564 U.S. at 241
 
 ,
 
 131 S.Ct. 2419
 
 . And it is not enough if the question is debatable.
 
 See
 

 Havatone
 
 ,
 
 241 Ariz. at
 
 512-13 ¶ 29,
 
 389 P.3d at 1257-58
 
 . The exclusionary rule's deterrent effect against unconstitutional warrantless searches is hardly advanced if the state can avoid consequence merely by plausibly asserting that it did not read binding precedent as unequivocally foreclosing a particular practice.
 

 ¶47 The majority counters that "Arizona appellate courts
 
 had
 
 authorized police reliance on the language used in the statutory admin per se admonition for over forty years at the time of Weakland's arrest."
 
 Supra
 
 ¶ 19. Indeed, courts frequently focused on the admonition's language, especially in the context of suspending a driver's license for failure to consent. But what our courts have never done, and what is at issue here, is to authorize the use of the admonition, standing alone, to establish voluntary consent under the Fourth Amendment, precisely the issue presented in
 
 Butler
 
 . Absent such authority, or in light of an unsettled state of law, we should not find the good-faith exception applicable.
 

 ¶48 The majority contends we were wrong in
 
 Havatone
 
 to require binding appellate authority specifically authorizing the practice in question, instead preferring the more flexible good-faith standard articulated in
 
 State v. Jean
 
 ,
 
 243 Ariz. 331
 
 ,
 
 407 P.3d 524
 
 (2018).
 
 Supra
 
 ¶ 9. Of course, the requirement of binding appellate precedent specifically authorizing the practice in question originated not in
 
 Havatone
 
 but in the U.S. Supreme Court's decision in
 
 Davis
 
 .
 
 See
 

 564 U.S. at 241
 
 ,
 
 131 S.Ct. 2419
 
 . Regardless, Justice Pelander, who authored the relevant standard in
 
 Jean
 
 , points out in his separate dissenting opinion that under either the
 
 Jean
 
 or
 
 Havatone
 
 standard, it is clear that "
 
 Butler
 
 sufficiently unsettled the aggregate of relevant Arizona case law relating to police officers' use of this 'admin per se' form to preclude application of the exception in this case."
 
 Supra
 
 ¶ 29.
 

 ¶49 The majority contends,
 
 supra
 
 ¶ 13, that the requisite binding appellate authorization is supplied by
 
 Campbell v. Superior Court
 
 ,
 
 106 Ariz. 542
 
 ,
 
 479 P.2d 685
 
 (1971), and
 
 State v. Brito
 
 ,
 
 183 Ariz. 535
 
 ,
 
 905 P.2d 544
 
 (App. 1995),
 
 abrogated by
 

 Valenzuela II
 
 ,
 
 239 Ariz. 299
 
 ,
 
 371 P.3d 627
 
 , which as the Court
 observed in
 
 Valenzuela II
 
 had not been "questioned or overruled,"
 
 239 Ariz. at
 
 309 ¶ 34,
 
 371 P.3d at 637
 
 .
 
 [4]
 
 But neither case provides the express authorization necessary to avoid consequence for the Fourth Amendment violation.
 

 ¶50 In
 
 Campbell
 
 , the Court considered various challenges to the implied consent law in the context of a DUI suspect's refusal to take a breath test, which resulted in a suspended license.
 
 106 Ariz. at 544-45
 
 ,
 
 479 P.2d at 687-88
 
 . As relevant here, the Court concluded in a single sentence that the statute did not violate the Fourth Amendment.
 

 Id.
 

 at 554
 
 ,
 
 479 P.2d at
 
 697 (citing
 
 Schmerber v. California
 
 ,
 
 384 U.S. 757
 
 ,
 
 86 S.Ct. 1826
 
 ,
 
 16 L.Ed.2d 908
 
 (1966) ). Nor have we ruled the statute unconstitutional in
 
 Valenzuela II
 
 or here. The Court's core holding in
 
 Campbell
 
 , applicable in the context of a
 
 civil
 
 proceeding, was that it is "reasonable under the circumstances to require a person to submit to a chemical test of his blood, brea[t]h or urine if arrested for driving while intoxicated or face a six months suspension of his driver's license."
 
 106 Ariz. at 546
 
 ,
 
 479 P.2d at 689
 
 . No warrant or voluntariness issues were before the Court in
 
 Campbell
 
 , and no issues relating to civil penalties are before us here. Given the markedly different context and issues presented,
 
 Campbell
 
 provides scant (if any) support for the proposition that acquiescence to the admonition establishes voluntary consent.
 

 ¶51 In
 
 Brito
 
 , the court of appeals dealt with a criminal defendant who also refused to take a breath test-again presenting no issues involving consent or warrants.
 
 183 Ariz. at 537
 
 ,
 
 905 P.2d at 546
 
 . Rather, the defendant argued that the admonition misstated the law.
 

 Id.
 

 at 538
 
 ,
 
 905 P.2d at 547
 
 . It is somewhat difficult to understand the court's holding, for it says both that a defendant does not have an "unfettered right to refuse" the tests, but also that "he may refuse the request" although "the refusal has consequences."
 

 Id.
 

 Regardless, like
 
 Campbell
 
 , the opinion says nothing about when a warrant is required or whether acquiescence to the admonition establishes voluntariness. Thus, neither decision authorizes reliance on the admonition to establish consent.
 

 ¶52 Our subsequent discussions of
 
 Butler
 
 demonstrate that the decision, at the least, unsettled the law. In
 
 Havatone
 
 , we emphasized that
 
 Butler
 
 held that § 28-1321"does not relieve the state of establishing voluntary consent ... to justify warrantless blood draws from DUI suspects."
 
 241 Ariz. at
 
 510 ¶ 16,
 
 389 P.3d at
 
 1255 (citing
 
 Butler
 
 ,
 
 232 Ariz. at
 
 87-88 ¶¶ 12-13, 18,
 
 302 P.3d at
 
 612-13 ). In
 
 Valenzuela II
 
 , the Court observed that "we have rejected the contention that the implied consent law operates to prospectively provide consent to a search for Fourth Amendment purposes."
 
 239 Ariz. at
 
 307 ¶ 25,
 
 371 P.3d at
 
 635 (citing
 
 Butler
 
 ,
 
 232 Ariz. at
 
 88 ¶ 18,
 
 302 P.3d at
 
 613 ). The Court stated that it has "focused on the totality of the circumstances,
 
 including but not limited to an officer's reading of an admin per se form
 
 , in determining whether a DUI suspect's consent to search was freely and voluntarily given."
 

 Id.
 

 at 305 ¶ 20,
 
 371 P.3d at 633
 
 (emphasis added) (citing
 
 Butler
 
 ,
 
 232 Ariz. at
 
 88-89 ¶¶ 19-20,
 
 302 P.3d at
 
 613 ). Given these apt readings of
 
 Butler
 
 , it is difficult to apprehend
 
 Valenzuela II
 
 's holding as upending settled and binding appellate precedent rather than as a logical next step that resolved any lingering uncertainty.
 

 ¶53 By the time of Weakland's 2015 arrest, our decisions clearly established that the implied consent statute "generally does not authorize law enforcement officers to administer the test without a warrant unless the arrestee expressly agrees to the test,"
 
 Carrillo v. Houser
 
 ,
 
 224 Ariz. 463
 
 , 463 ¶ 1,
 
 232 P.3d 1245
 
 (2010) ; and that constitutionally, the State must prove under the totality of the circumstances that the consent was voluntary and express, and not merely implied,
 
 Butler
 
 ,
 
 232 Ariz. at
 
 88 ¶¶ 18-19,
 
 302 P.3d at 613
 
 . At that point, a blanket policy to read the admonition but not to otherwise establish consent could not have been made in good faith, and therefore the good-faith exception
 to the exclusionary rule should not apply. At the same time, excluding the evidence here would incentivize law enforcement officials to more carefully monitor and apply the law, to err on the side of obtaining a warrant, and therefore to avoid the need for a court to exclude evidence in future cases.
 

 ¶54 The majority's opinion significantly expands the good-faith exception. Instead of requiring binding appellate precedent that expressly authorizes the practice, it finds good faith where there is a smidgeon of authority and an abundance of doubt. As Justice Pelander aptly characterizes it, instead of erring on the side of constitutional behavior, the police "proceeded in the face of 'unsettled' law."
 
 Supra
 
 ¶ 37. For those reasons, with great respect to my colleagues, I dissent.
 

 The United States Supreme Court has repeatedly debated the purported costs and benefits of the judicially created exclusionary rule in its Fourth Amendment jurisprudence.
 
 See, e.g.
 
 ,
 
 Utah v. Strieff
 
 , --- U.S. ----,
 
 136 S.Ct. 2056
 
 ,
 
 195 L.Ed.2d 400
 
 (2016) ;
 
 Hudson v. Michigan
 
 ,
 
 547 U.S. 586
 
 ,
 
 126 S.Ct. 2159
 
 ,
 
 165 L.Ed.2d 56
 
 (2006). But this case involves only the good-faith exception to the exclusionary rule, not the underlying purposes, policies, or continued viability of the rule itself, which the Supreme Court still recognizes. And, as the majority acknowledges, the State "bears the burden of establishing that the good-faith exception applies."
 
 Supra
 
 ¶ 7.
 

 Indeed, given this Court's ruling in
 
 Butler
 
 , I warned that "the safest course of action for law enforcement might simply be to obtain search warrants, when reasonably feasible, for obtaining blood samples in DUI investigations."
 
 232 Ariz. at
 
 92 ¶ 37,
 
 302 P.3d at 617
 
 (Pelander, J., concurring). Had that warning been heeded almost two years later when Weakland was arrested, the State's reliance on the good-faith exception would be unnecessary.
 

 The majority also cites unpublished court of appeals decisions that ostensibly support its position that appellate decisions sanctioned police use of the admonition.
 
 Supra
 
 ¶ 16. But they cannot constitute the requisite binding appellate authority required to trigger the application of the good-faith exception.
 
 See
 
 Ariz. R. Sup. Ct. 111(c).